UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANTHONY CONLEY,
    Plaintiff,

vs.                                                                               09-1299

MARCIA KEYS,, et al.
    Defendants.

SUMMARY JUDGMENT AND CASE MANAGEMENT ORDER

This cause is before the court for consideration of Defendants Keith Anglin, Victor Calloway, Suzanne Griswold and Marcia Keys' motion for summary judgment, [d/e 50]; the Plaintiff's motion to supplement his response with the affidavit of an expert [d/e 56] and the Defendants motion to strike that affidavit. [d/e 61]

I. BACKGROUND

The court dismissed the Plaintiff's original complaint as a violation of Rule 8, 18 and 20 of the Federal Rules of Civil Procedure. *See* September 21, 2009 Court Order. After merit review of the Plaintiff's amended complaint, the court found that the Plaintiff had stated two claims pursuant to 42 U.S.C. §1983 against seven Defendants at Danville Correctional Center. *See* October 29, 2009 Merit Review Order. On August 12, 2010, the court granted summary judgment on one claim for failure to exhaust administrative remedies. *See* August 12, 2010 Summary Judgment Order.

Therefore, the Plaintiff has one surviving claim before the court: Defendants Marcia Keys, Suzanne Griswold, Keith Anglin and Victor Calloway were deliberately indifferent to the Plaintiff's health and safety when they continued to provide the Plaintiff a high soy content diet despite the negative consequences for the Plaintiff's health.

II. FACTS

Defendant Marcia Keys states that she is the Corrections Food Service Manager for the Illinois Department of Corrections (herein IDOC) at Danville Correctional Center. Keys says her duties include managing food preparation as well as the service, storage, baking, meat cutting and other food services at the correctional center. (Def. Mot, Keys Aff, p. 1). Keys says she also must make sure that the facility follows the menus issued by IDOC's Food Service Administrator. These menus specify food items and portion sizes. Finally, Keys says she is also responsible for supervising other Food Service Supervisors at Danville Correctional Center.

Keys says all meals served to inmates at Danville are prepared in the kitchen by inmates under the supervisor of Food Service Supervisors. The supervisors follow all IDOC rules and

1

regulations in the preparation of that food. (Def. Mot, Keys. Aff. p.2). "Substitutions of food items that meet necessary dietary restrictions become necessary on occasion due to the unavailability of certain food items." (Def. Mot, Keys Aff, p. 1). However, Keys says she is not personally responsible for creating menus or portion sizes. All of those decisions are made by IDOC's Food Service Administrator. Keys says she is not aware of any risk of harm to inmates based on the consumption of soy.

Suzanne Griswold says she is the IDOC Food Service Administrator. She also states that she is not aware of any risk of harm to inmates based on the consumption of soy or other food served by the IDOC. Griswold says she has never met or spoken with the Plaintiff. (Def. Memo, Griswold Aff., p.1). The Plaintiff agrees that he has never communicated with Griswold, but he named her as a Defendant because of her supervisory position. (Def. Mot, Ex. A., Plain. Aff., p. 66)

The Plaintiff says he named Warden Keith Anglin as a Defendant because he believes this Defendant had notice of the high soy content in his diet due to his March 7, 2008 grievance. The Plaintiff says Anglin did not personally respond to his grievance nor did he ever speak directly to Anglin. (Def. Mot, Ex. A., Plain. Aff., p. 61-62). The Plaintiff also says he wrote a letter to Anglin in 2008 or 2009.

The Plaintiff says he did have a brief conversation with Defendant Calloway in 2009 when he asked why he had to go through the Chaplain for a non-soy diet. Calloway said he was aware of the Plaintiff's grievance. (Def. Mot, Ex. A., Plain. Aff., p. 65).

The Plaintiff has been incarcerated since 1997. (Def. Memo, Ex. A., p. 7). When he entered IDOC, the Plaintiff says he weighed 285. He currently weighs 352. During his incarceration, the Plaintiff says he has purchased items from the commissary about three times a month. The Plaintiff admits some of the items he selects contain soy. (Def. Mot, Ex. A., Plain. Aff., p. 14).

The Plaintiff says he was diagnosed with high blood pressure in 1997. He was diagnosed with high cholesterol in 2000. The Plaintiff says he was diagnosed with H. Pylori in March of 2008 and November of 2008 by Dr. Amegi. (Def. Mot, Ex. A., Plain. Aff., p. 21-22) The Doctor told the Plaintiff that the cause could be from fecal matter in water or contaminated utensils. (Def. Mot, Ex. A., Plain. Aff., p. 24). The Plaintiff admits the Doctor did not tell him soy products were the cause of H. Pylori. (Def. Mot, Ex. A., Plain. Aff., p. 25

In his deposition, the Plaintiff say he filed this lawsuit because he believes he is sensitive to soy. The Plaintiff says he first noticed a difference in 2008. (Def. Mot, Ex. A., Plain. Aff., p. 27-28). The Plaintiff says he believes soy irritates his bowel and causes an excessive amount of gas. (Def. Mot, Ex. A., Plain. Aff., p. 33). The Plaintiff further believes the soy causes acid reflux and blood in his stool. (Def. Mot, Ex. A., Plain. Aff., p. 33). The Plaintiff says he also believes soy has estrogen that he should not be consuming. The Plaintiff says he learned about the estrogen levels from another inmate who provided him with a copy of a study. ((Def. Mot, Ex. A., Plain. Aff., p. 39). No doctor has ever told the Plaintiff he has high estrogen levels. (Def.

Mot, Ex. A., Plain. Aff., p. 40-41).

In his deposition, the Plaintiff says Dr. Amegi told him he had irritable bowel syndrome in February of 2008. The Plaintiff says no doctor has ever told him it was caused by soy. (Def. Mot, Ex. A., Plain. Aff., p. 35). The Plaintiff further stated that after he eats soy, he has foul smelling gas, but again, no Doctor has ever told him that soy was the cause. (Def. Mot, Ex. A., Plain. Aff., p. 38). The Plaintiff says he first noticed blood in his stool in 2008 and he noticed it after he ate soy. The Plaintiff admits that a Doctor told him H. Pylori could cause this. (Def. Mot, Ex. A., Plain. Aff., p. 42).

The Plaintiff says at times he has had problems with a lump in his stomach. The Plaintiff says it only happens when he eats soy. He did go to a Doctor for an examination who told him the lump was caused by gas. (Def. Mot, Ex. A., Plain. Aff., p. 47-48).

## III. LEGAL STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

"Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## IV. ANALYSIS

The Defendants argue that the Plaintiff cannot demonstrate that they violated his Eighth Amendment rights. The Constitution's prohibition against punitive conditions imposes upon prison officials the duty to "provide humane conditions of confinement" for prisoners. *Farmer v Brennan,* 511 U.S. 825, 832 (1994). Correctional officials must ensure that inmates receive "adequate food, clothing, shelter, protection, and medical care." *Oliver v. Deen*, 77 F.3d 156, 159 (7th Cir. 1996). Proof of a conditions of confinement claim entails both an objective component and a subjective one. *Wilson v. Seiter*, 501 U.S. 294 (1991); *Delany v. DeTella*, 256 F.3d 679, 683 (7th Cir. 2001). To show that a deprivation is "objectively, sufficiently serious," the Plaintiff must demonstrate that he was subjected to an "extreme deprivation." *Turner v. Miller*, 301 F.3d 599, 603

(7th Cir. 2002) *citing Delany* 256 F.3d at 683. The subjective component requires the Plaintiff to show that the Defendants acted with "deliberate indifference," which entails, at "a minimum," that the Defendants acted with "*actual* knowledge of *impending* harm *easily* preventable." *Delany,* 256 F.3d at 683 *quoting Jackson v. Duckworth,* 955 F.2d 21, 22 (7th Cir. 1992).

      First, the Defendants argue that the Plaintiff has presented no medical evidence that the soy diet has caused him any serious harm. The court noted in its initial merit review order that it was "doubtful the Plaintiff can demonstrate that the consumption of soy lead to the diagnosis of an H. Pylori or Helicobacter Plylor infection." October 29, 2009 Merit Review Order, p. 2. H. Pylori "is a bacterial infection that affects the stomach lining." *Hardy v Aguinaldo*, 2003 WL 21350070 at 4 (N.D. June 10, 2003). The bacteria "is most likely spread by fecal contamination of food and eating utensils or by contaminated water." *Lozano v Corrections Corp. of America,* 2001 WL 1355607 at 1 (6th Cir. Oct. 26, 2001). *See also Woodard v Weberg,* 2009 WL 310898 at 4 (W.D. Mich. Feb 6, 2009) ("transmission of H. Pylori bacterium generally requires oral-oral or fecal-oral contamination."). In his deposition, the Plaintiff now admits that H. Pylori was not caused by soy. (Def. Mot, Ex. A., Plain. Aff., p. 25).

      Also in his deposition, the Plaintiff admits that no doctor has ever told him that his irritable bowel syndrome was caused by the consumption of soy. (Def. Mot, Ex. A., Plain. Aff., p. 35). He admits that no doctor has ever told him he has high estrogen levels. (Def. Mot, Ex. A., Plain. Aff., p. 40, 41). He admits that no doctor has ever told him that eating soy caused him to pass blood in his stool. (Def. Mot, Ex. A., Plain. Aff., p. 42) He admits that no doctor has ever told him that his acid reflux was caused by soy. (Def. Mot, Ex. A., Plain. Aff., p. 46) He admits that no doctor has ever told him that the lump he describes in his stomach is caused by soy. (Def. Mot, Ex. A., Plain. Aff., p. 48)

      The Plaintiff's claims are based on his own belief that soy impacts his health. The Plaintiff says his symptoms go away if he stops eating soy for a period of time. However, the Plaintiff has no expertise in nutrition or diet, and "[e]xpert testimony is required when the causal link between an alleged deprivation and injury is not within the common experience or observation of the average juror." *Hoeft v. Harrop*, 2010 WL 743842 at 2 (7th Cir. Mar. 4, 2010); *see also Hendrickson v Cooper*, 589 F.3d 887, 892 (7th Cir. 2009). The court notes that the Plaintiff has made an eleventh hour attempt to submit the testimony of an expert in this case which the court discusses below. However, in his deposition, the Plaintiff said he did not have an expert witness and he did not disclose or submit an expert witness report at any time prior to the close of discovery or the motion for summary judgment. (Def. Mot, Ex. A., Plain. Aff., p. 60).

      The court notes that even if the Plaintiff could somehow prove that he face a sufficiently serious harm, he has no evidence that the Defendants were deliberately indifferent. In other words, he has no evidence that these Defendants knew that Plaintiff suffered from the alleged symptoms or knew that the IDOC's soy diet caused them or carried a substantial risk of harm of causing them. For instance, the Plaintiff says he believes Warden Anglin knew about his problems with the soy diet because he wrote a grievance. However, the Plaintiff admits the Warden did not personally review his grievance and he has no evidence that he read it. (Def.

Mot, Ex. A., Plain. Aff., p. 61, 62). The Plaintiff also never spoke directly to the Warden. The Plaintiff also claims he wrote a letter to Warden Anglin sometime in 2008 or 2009, but has no evidence Anglin received it or read it. *See Wagner v McCann*, 2011 WL 3205352 at 5(N.D.Ill. July 27, 2011) (a single letter is "insufficient for personal liability to attach."); *Volk v Coler*, 638 F.Supp 1540, 1549 (C.D. 19860 *aff'd* 845 F.2d 1422 (7th Cir. 1988)(letters are insufficient to create personal involvement.); *Gray v Taylor*, 714 F.Supp2d 903, 911 (N.D.Ill. 2010)(Letters to IDOC Director did not create personal involvement.) The Plaintiff has failed to demonstrate that Defendant Anglin has any liability for his claims concerning his soy diet.

The Plaintiff says he named Defendant Griswold as a Defendant because she is the food service supervisor and makes out the IDOC menus. However, the Plaintiff has never communicated with her in any way. There is no evidence that the Defendant was aware of a risk of harm to IDOC inmates based on the soy in the diet, nor that she was aware of any specific problems claimed by the Plaintiff.

The Plaintiff says he talked with Defendant Calloway briefly in 2009, and he asked why he had to talk to the Chaplain about a non-soy diet. The Plaintiff claims Defendant Calloway was aware of his grievance, but this is the only contact he had with the Defendant. The response to the Plaintiff's grievance indicated that all menus provided to the Plaintiff were approved by IDOC administration in Springfield and the diet follow all required policies and procedures. There is no evidence before the court that this Defendant had any responsibility for the IDOC diet, nor that he knew soy in the diet was harmful to inmates.

The Plaintiff claims he did speak to Defendant Keys and requested a non-soy diet in February of 2008. The Plaintiff says he told her he was having gas problems. The Defendants state that even assuming this is true, gas does not rise to the level of constitutional consideration. There is no evidence that this Defendant has reason to believe soy posed a serious risk to the Plaintiff. Furthermore, both Calloway and Keys relied on the menus set and approved by the administration in Springfield. Keys says it was her job to make sure that all the menus at Danville followed these requirements, and there is no evidence to support that the Plaintiff's health problems were attributable to this diet. *See Givens v Walker*, 2009 WL 3575379 (C.D.Ill. Oct. 23, 2009 (summary judgment granted when no evidence provided that claimed medical problems were attributable to a soy diet.)

As this court has noted, the Plaintiff has filed a motion asking the court to stay a decision on the motion for summary judgment until he can present an affidavit from his expert witness. [d/e 56]. The Plaintiff has then filed an affidavit from Clinical Nutritionist Kaayla Daniel. [d/e 57]. The Defendants have responded with a motion to strike the affidavit. [d/e 61]

The Defendants state that the Plaintiff did not properly disclose an expert witness pursuant to Federal Rule of Civil Procedure 26(a)(2). The Defendants say the Plaintiff did not state he had an expert witness in response to interrogatories, nor did he say he had an expert when asked during his deposition. (Def. Mot, Ex. A, B). Therefore, no discovery was conducted concerning this witness and since discovery closed on January 31, 2011, the Defendants are that its too late to conduct discovery at this point in the litigation.

5

The Plaintiff says he did disclose that Ms. Daniel might be a witness in response to interrogatories, but the court notes that the Plaintiff did not clearly designate that she would qualify as an expert witness.

Because expert witnesses are different from other witnesses, there is a special rule requiring Plaintiffs and Defendants to name their experts and explain what those experts are going to say at trial. Fed.R.Civ.P. 26(a)(2). If a party does not follow these guidelines, then the "court will not allow that expert witness to present evidence in this case." *Serocki v. Snthes CMF*, 2006 WL 6210737 at 2(W.D. Wis. Oct. 27, 2006). The court does recognize that Rule 26 requires the disclosure of expert witnesses at the time directed by the court or in the absence of such a court order, the disclosures must be made " at least 90 days before the date set for trial or for the case to be ready for trial." 26(c)(2). In the case before the court, there was a general date set for the end of discovery and no trial date had been set when the summary judgment motion was filed. Nonetheless, the Plaintiff has provided no explanation for his failure to disclose this expert witness or provide her report prior to the close of discovery.

More importantly, the court notes that even if the court allowed the Plaintiff to submit the affidavit of Ms. Daniel, it would not be helpful to his claims. Daniel states she is a clinical nutritionist with extensive background in the effects of soy in the diet. Ms. Daniel says:

> It is my opinion that, based on the soy content of the food served by the Illinois Department of Corrections, if (the Plaintiff) is not allowed to purchase commissary food and is forced to consume the general population diet that his health will continue to be endangered. (d/e 57, Dan. Aff., p.4).

The Plaintiff has never claimed that he was denied the ability to buy food from the commissary and in fact admits that he does purchase food on a regular basis. (Def. Mot, Ex. A., Plain. Aff., p. 14). The motion to add the affidavit is therefore denied. [d/e 56]. The motion to strike the affidavit is denied as moot. [d/e 61]

**IT IS THEREFORE ORDERED that:**

**1) The Plaintiff's motion to supplement his response to the motion for summary judgment with the affidavit of an expert is denied. [d/e 56]. The Defendants' motion to strike the affidavit is denied as moot. [d/e 61]**

**2) Defendants Anglin, Calloway, Keys and Griswold's motion for summary judgment is granted. [d/e 50 ]. The Clerk of the court is directed to enter judgment in favor of the Defendants and against the Plaintiff pursuant to Fed. R. Civ. P. 56.**

**The case is terminated.  The parties are to bear their own costs.**


**3) If the Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within 30 days of the entry of judgment.  Fed. R. App. P. 4(a)(4).  A motion for leave to appeal *in forma pauperis* should set forth the issues the Plaintiff plans to present on appeal.  *See* Fed. R. App. P. 24(a)(1)(C).  If the Plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal.**


**4) The agency having custody of the Plaintiff is directed to remit the docketing fee of $350.00 from the Plaintiff's prison trust fund account if such funds are available.  If the Plaintiff does not have $350.00 in his trust fund account, the agency must send 20 percent of the current balance, or the average balance during the past six months, whichever amount is higher; thereafter, the agency shall begin forwarding monthly payments from the Plaintiff's trust fund account to the clerk of court each time the Plaintiff's account exceeds $10.00 until the statutory fee of $350.00 is paid in its entirety.  The filing fee collected shall not exceed the statutory filing fee of $350.00.**


**5) The Plaintiff is responsible for ensuring the $350.00 filing fee is paid to the clerk of the court even though his case has been dismissed.  Release from incarceration does not relieve the Plaintiff of his obligation to pay the filing fee in full.  The Plaintiff must notify the clerk of the court of a change of address and phone number within seven days of such change.**


**6)  The clerk is directed to mail a copy of this order to the Plaintiff's place of confinement, to the attention of the Trust Fund Office.**


Entered this 29th day of August, 2011.

                                            s/James E. Shadid
                                  _____
                                            JAMES E. SHADID
                                     UNITED STATES DISTRICT JUDGE